IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| BEVERLEY JOAN MCCOY, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>INTERMOUNTAIN HEALTH; SCL HEALTH – MONTANA; STACY PARKER; JOSH BUNZ; and JOHN DOES 1-10,<br><br>Defendants. | CV 26-57-BLG-KSL<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff Beverley McCoy sued Defendants Intermountain Health, SCL Health—Montana, Stacy Parker, Josh Bunz, and John Does 1-10 (collectively, Hospital Parties) under state and federal law after her termination from Intermountain Health, where she had worked for more than three decades. McCoy asserts four claims, but the Hospital Parties now move to dismiss McCoy's emotional distress claim as preempted by the Wrongful Discharge from Employment Act. Mont. Code Ann. §§39-2-901, *et seq.* (Doc. 5). The Act preempts McCoy's emotional distress claim to the extent the claim rests on the written warnings and the ultimate

termination. But the Act does not preempt her emotional distress claim and request for damages based on when she was escorted from the building by security prior to her termination.

## I. Background

Plaintiff Beverley McCoy worked for SCL Health—Montana for over 30 years without any disciplinary or performance issues. (Doc. 4 at ¶¶7-8, 39). On April 1, 2025, several years after SCL Health merged with Intermountain Healthcare, McCoy received her first written warning for moving a coworker's bag. (*Id.* at ¶¶9, 17). After her warning, she began treatment for anxiety and emotional distress. (*Id.* at ¶18, 20). On May 29, 2025, she received another written warning, this time for alleged laziness and interpersonal issues with coworkers. (*Id.* at ¶21). She applied for and began leave under the Family Medical Leave Act the same day. (*Id.*at ¶¶23, 24). While on leave, McCoy reached out to coworkers to offer apologies "for anything she may have done to upset them recently. (*Id.* at ¶26). She also attempted to appeal both of her warnings. (Id. at ¶¶19, 22). On June 9, 2025, while still on medical leave, she returned to the job site to retrieve materials relevant to her appeal and coordinate details for an event. (*Id.* at ¶29). Parker, Intermountain, and SCL Health arranged for security to remove McCoy from the premises, allegedly causing

emotional distress. (*Id.*) Intermountain first suspended and then later terminated McCoy's employment once her leave expired for "retaliating" because, as McCoy alleges, she "had apologized to coworkers and supervisors during her leave of absence." (*Id.* at ¶¶25, 30-32, 39).

McCoy sued in state court, alleging wrongful discharge, emotional distress, discrimination, and retaliation under both state and federal law. (*Id.* at ¶¶37-63). McCoy asserts that the warnings and security incident were pretextual reasons for her termination. (*Id.* at ¶¶30-39, 54, 61). In pleading emotional distress, McCoy "re-alleges each and every fact" leading up to and including her termination. (*Id.* at ¶42). Specifically, the claim for emotional distress "includ[es] but [is] not limited to" the security incident on June 9. (*Id.* at ¶43). The claim also includes emotional distress following the written warnings. (*Id.* at ¶¶18, 20, 42). Finally, the claim relies on the allegedly wrongful suspension and termination itself. (*Id.* at ¶¶30-39, 42). The Hospital Parties removed to federal court based on federal question jurisdiction under 28 U.S.C. §1331. (Doc. 3-1 at 10). They now move to dismiss the emotional distress claim as preempted by the Wrongful Discharge from Employment Act. (Doc. 5).

## II. Standard of Review

Under 28 U.S.C. §1441(a), a defendant can remove a case from state to federal court, provided it could originally have been brought in federal court. A federal court has an independent obligation to confirm its own jurisdiction, even if the parties do not raise jurisdictional defects. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1116 (9th Cir. 2004). If at any time before final judgment the federal court determines it lacks subject matter jurisdiction, the federal court must remand the action to state court. 28 U.S.C. §1447(c).

Once the parties remove a case, federal pleading standards govern. *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1021 (9th Cir. 2013). To state a claim, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). On a motion to dismiss, the Court must take all well-pleaded allegations as true, *id.*, and construes them "in the light most favorable to the nonmoving party." *Armstrong v. Reynolds*, 22 F.4th 1058, 1079 (9th Cir. 2022). Finally, the Court "must disregard facts that are not alleged on the face of the complaint or contained in documents attached to the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

## III. Analysis

### A. Subject Matter Jurisdiction

In removing the case to federal court, the Hospital Parties rely solely on 28 U.S.C. §1331. Under §1331 federal courts have original jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States." McCoy raises four claims, each of which raise state-law issues. But McCoy's third claim alleges age discrimination in violation of both state and federal law. (Doc. 4 at ¶¶51-56 (citing the Age Discrimination in Employment Act, 29 U.S.C. §§621-634)). Because McCoy presents a federal question "on the face" of her complaint, this Court may properly exercise jurisdiction over McCoy's federal claims. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

This Court may also exercise supplemental jurisdiction over McCoy's state-law claims. Under 28 U.S.C. §1367(a), a federal court with original jurisdiction under §1331 has discretion to hear state law claims that "form part of the same case or controversy." *See also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). Here, McCoy's state law claims form part of the same controversy and are based on the same set of facts. Because the parties do not challenge this Court's supplemental

jurisdiction, the Court need not sua sponte consider whether to decline that jurisdiction under §1367(c). *Acri v. Varian Assoc.*, 114 F.3d 999, 1001 (9th Cir. 1997).

**B. Preemption**

The Wrongful Discharge from Employment Act provides the "exclusive remedy" for claims based on wrongful discharge in Montana. Mont. Code Ann. §39-2-902. The Act expressly preempts any "claims arising from an asserted wrongful discharge based upon common law tort or implied or express contract." *Solle v. W. States Ins. Agency*, 999 P.2d 328, 331 (Mont. 2000); Mont. Code Ann. §39-2-913. This means that while tort or contract claims arising from employment more broadly may proceed in some circumstances, the Act bars claims specifically "for discharge." *Beasley v. Semitool, Inc.*, 853 P.2d 84, 86 (Mont. 1993). For successful claims brought under the Act, an employee may be "awarded lost wages and fringe benefits" as well as potential "punitive damages" in some circumstances. Mont. Code Ann. §39-2-905(1), (3). But the Act prohibits recovery of damages for "emotional distress." §39-2-905(4).

When a plaintiff brings a claim in tort or contract, the key inquiry for purposes of preemption is whether and to what extent that claim is for harms stemming from discharge or from another event. Mont. Code Ann. §39-2-913. Because McCoy's

emotional distress claim arises under state law, this Court looks to the Montana Supreme Court for the meaning of the Act and whether McCoy's claim is based on her discharge. *See Cortez v. Skol*, 776 F.3d 1046, 1054 n.8 (9th Cir. 2015); *Mangold v. Cal. Pub. Util. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995). In interpreting §39-2-913, the Montana Supreme Court has explained the Act preempts a claim if it is "inextricably intertwined with and based on" the discharge, *Beasley*, 853 P.2d at 87, but the Act does not preempt a claim if it qualifies as a "separate and independent tort unrelated" to the discharge. *Kneeland v. Luzenac America,* 961 P.2d 725, 729 (Mont. 1998). As evidence of the relationship between the claim and the discharge, a court may look to, for example, the timing of the alleged acts with respect to the termination, *Dagel v. City of Great Falls*, 819 P.2d 186, 195 (Mont. 1991), the stated reason for the termination, *Winsor v. Montana*, 544 P.3d 234 (Mont. 2024) (unpublished table decision), whether the damages are alleged separately from those from discharge, *Beasley*, 853 P.2d at 86, and whether the claim "could have been brought regardless" of employment status, *Kulm v. Mont State Univ.-Bozeman*, 948 P.2d 243, 246 (Mont. 1997).

Several cases illustrate how courts apply this fact-specific inquiry. For example, in *Kulm*, when the defendant did not renew the plaintiff's employment contract

as allegedly promised, the plaintiff sued for fraud and negligent misrepresentation based on those promises. 948 P.2d at 244-45. The claims were inextricably intertwined with employment because his claims were based on "early termination." *Id.* at 246. Had the employer "not acted on its decision to terminate Kulm after one year, he would have no grievance." *Id.* Likewise, in *Kneeland*, after the plaintiff was laid off, the employer rehired five other workers that it had previously terminated. 961 P. 2d at 727. The plaintiff sued based on the employer's "failure to reinstate, recall, or rehire him." *Id.* The employer never promised the plaintiff that it would rehire him and there was no company policy requiring the employer to do so. *Id.* at 729. Because the employer had no independent duty to rehire the plaintiff, the plaintiff's complaint was just relitigating ongoing harm from the discharge itself and was therefore barred. *Id.* at 729-30.

But as long as the claim can be separated from termination, it can proceed even if it relies on facts which independently caused the end of the employment relationship. In *Beasley*, for example, the plaintiff alleged breach of contract based on the same misrepresentations about compensation which caused his resignation. 853 P.2d at 85. Even though the breach of contract claim relied on the same facts as the wrongful discharge claim, it could proceed because it arose from a "breach of

his employment contract rather than from an alleged wrongful discharge." *Id.* at 87. The breach of employment contract rested on failure to follow through on promises of "stock options, bonuses … and opportunities for advancement." *Id.* at 84-85. Those promises, and the failure of the employer to follow through on those promises, existed separate and independent from the plaintiff's alleged wrongful discharge. *Id.* at 86. In *Winsor v. Montana*, the plaintiff's jury finding of emotional distress was upheld because it was based on a campaign of abuse and harassment that predated the termination and would have occurred absent termination. 544 P.3d at 234. Importantly, the employer's termination letter identified a single reason for termination: that the employee had been inflating his time sheet, thereby requesting payment for hours not worked. *Id.* But the emotional distress arose from "events that had nothing to do with his time tracking" and happened before he was even notified about "the time tracking discrepancy." *Id.* Finally, in *Ruzicka v. First Healthcare Corp.*, the plaintiff, a registered nurse, was terminated for alleged patient abuse. 45 F. Supp. 2d 809, 810-11 (D. Mont. 1997). Following the employer's related report to the Montana Board of Nursing, the plaintiff sued for malicious damage to professional reputation. *Id.* at 811. Because the defendant's assertion that the plaintiff's claims were inextricably intertwined with employment was "conclusory," and the

plaintiff intended to plead the malicious damage claim separately from wrongful discharge, the claim was allowed to proceed. *Id.* at 812.

A statute does not remove common law claims "except to the extent that the statute expressly or by necessary implication declares." *Sunburst Sch. Dist. No. 2 v. Texaco, Inc.*, 165 P.3d 1079, 1091(Mont. 2007). Because the Act preempts only claims inextricably intertwined with discharge, the portion of a claim that does not depend on termination survives. In *McGinnis v. City of E. Helena*, a former police chief sued for emotional distress based on harassment by the mayor and termination from employment. 63 P.3d 512 (Mont. 2002) (unpublished table decision). The Act preempted the claim "only to the extent that [the plaintiff's] avowed emotional distress stem[ed] directly from his termination." *Id.* The court later rejected the other portions of the claim on other grounds. *Id.*

In applying state law, the District of Montana has held that the Act preempts parts of a claim while allowing other parts of the claim to proceed. In *Wilhite v. United States*, a supervisor locked the plaintiff out of her employer-provided housing following an investigation about another person abusing patients, and then the Board of Directors terminated the plaintiff eight days later for allegedly possessing a gun in her car. No. CV 19-102-BLG-SPW-TJC, 2020 WL 6136382, at *1-2 (D. Mont.

Aug. 3, 2020), *report and recommendation adopted*, No. CV 19-102-BLG-SPW, 2020 WL 5105434 (D. Mont. Aug. 31, 2020). The facts in *Wilhite* show that the plaintiff's supervisor who directed the plaintiff's landlord to lock her out of her apartment was not part of the ultimate termination decision, and the termination decision was not based on the investigation or her housing situation. *Id.* at *1-2. The Act barred the plaintiff's emotional distress claim to the extent that the distress resulted from termination. *Id.* at *6. But to the extent that the plaintiff based the claim on exclusion from her apartment while she was an employee, the claim "was not contingent upon her termination," and was therefore allowed to proceed. *Id.*

In *Jessup v. Lucky's Mkt. Holdings, LLC*, the Act allowed part of the plaintiff's breach of implied covenant and defamation claims to proceed to the extent the facts showed the claims were separate from termination. No. CV 15-40-BLG-CSO, 2015 WL 7428550, at *5 (D. Mont. Nov. 20, 2015). The implied covenant claim was based on the plaintiff's "abrupt[ ] terminat[ion]" and a failure to pay an agreed-upon "break-even" bonus. *Id.* Because only the termination aspect of the claim was based on discharge, only that portion of the claim was preempted. *Id.* The same reasoning governed the plaintiff's defamation claim, which was based on statements "regarding unemployment benefits" and statements to coworkers, industry employees and

third parties. *Id.* Under *Kulm*, a claim is preempted if it could not have been brought "regardless" of the plaintiff's employment status. 948 P.2d at 246. Because the plaintiff in *Jessup* would not have sought unemployment benefits absent his termination, the Act preempted the claim to that extent. *Jessup*, 2015 WL 7428550, at *5. On the other hand, the remaining statements were not necessarily based on his termination, so that portion of the claim was allowed to proceed. *Id.* Both *Wilhite* and *Jessup* show that regardless of how parties label a claim, the central question is whether and to what extent the alleged harms can be separated from termination.

The Act preempts McCoy's emotional distress claim only in part. Although McCoy incorporates by reference a myriad of facts that seem unrelated to termination or emotional distress, she appears to base her claim on three general factual predicates: her written warnings (Doc. 4. at ¶¶17-21, 42), her removal by security on June 9 *(Id.* at ¶¶29, 43), and her suspension and termination (*Id.* at ¶¶30-39, 42). The Court will address each in turn.

**1. The Act Preempts the Emotional Distress Claim to the Extent it Depends on Written Warnings.**

Although the parties focus on the security incident because it provides the primary basis for McCoy's claim, McCoy first alleges she suffered anxiety and emotional distress after her first written warning. (Doc. 4 at ¶¶18, 20, 42-43). No similar

allegations follow her other written warning, but she realleges these warnings occurred as part of the emotional distress claim. (*Id.* at ¶42). Following the written warnings, McCoy apologized to coworkers "for anything she may have done to upset them recently." (*Id.* ¶26). McCoy alleges that those very apologies to her coworkers were what resulted in her termination. (*Id.* ¶¶31-32).

The written warnings, apologies, and ultimate termination all rest on McCoy's conduct towards her coworkers, and they cannot be separated as independent events. McCoy received two written warnings. (*Id.* at ¶¶17, 21). The first warning was for her "moving her coworker's bag." (*Id.* at ¶17). The second warning contained allegations that she sat on the couch while her coworkers were busy and that she was "abrupt" in conversations and had "tension" with the Nurse Clinical Lead. (*Id.* at ¶21). The same day McCoy received this second warning, she began a leave of absence, during which she sent apologies for "anything she may have done to upset [coworkers] recently"—the same coworker-directed conduct underlying the written warnings themselves. (*Id.* at ¶¶17, 21, 26).

The close relationship between the warnings, apologies, and termination distinguish McCoy's claim from the claims in *Beasley* and *Winsor*. In *Beasley*, for example, the plaintiff's contract claims were about compensation-related promises

made at the outset of his employment, not about events linked to his termination. 853 P.2d at 87. These two events—oral promises about compensation and termination—were sufficiently distant in terms of both subject matter and timing. Here, the written warnings are wrapped up in the termination because the warnings, apologies, and termination all come back to McCoy's alleged conduct towards her coworkers. And in *Winsor*, the events allegedly giving rise to emotional distress were not the same reasons given in the plaintiff's termination letter. 544 P.3d at 234. In comparison, McCoy's termination was based on her apologies to her coworkers for her prior conduct, which was the basis for the written warnings.

*Roos v. City of Miles City* further confirms that because the written warnings were part of the justification—albeit indirectly—for the termination, McCoy's emotional distress claim cannot proceed on that basis. In *Roos*, the plaintiff asserted that her employer negligently investigated her alleged misconduct. *Roos v. City of Miles City*, 439 P.3d 387, 388 (Mont. 2019) (unpublished table decision). Because the results of the investigation resulted in her termination, the Montana Supreme Court held that the investigation—negligent or not—could not be separated from the termination. *Id.*

Here, the warnings are likewise tied to and part of the discharge. The warnings and apologies here share a common factual basis—McCoy's purported conduct toward her coworkers—and occurred in close succession. *See, e.g.*, *Dagel*, 819 P.2d at 195; *Kulm*, 948 P.2d at 246. And as McCoy alleges in her complaint, the stated reason for her termination was these apologies. *See, e.g.*, *Roos*, 439 P.3d 388. Because the warnings are inextricably intertwined with the discharge, the Act preempts the claim to the extent that it is based on written warnings.

**2. The Act Does Not Preempt the Emotional Distress Claim to the Extent it Depends on Removal by Security.**

The parties next dispute whether McCoy's removal by security is sufficiently distinct from her termination to allow her emotional distress claim to proceed on that basis. McCoy asserts the two events are unrelated. (Doc. 10 at 7). According to the complaint, McCoy returned to the hospital while on leave to retrieve materials relevant to her appeal of one of her written warnings and collect details for an event. (Doc. 4 at ¶29). McCoy alleges that she was removed from the premises but fails to provide any reason for her removal. (*Id.*) Nowhere does she allege that the security incident was connected to her termination or the underlying apology emails. (*Id.* at ¶¶26-32). Rather, she alleges that because she sent apologies to her coworkers while

on leave, she was terminated for "retaliating." (*Id.* at ¶¶26, 31-32). Under McCoy's version of events, the termination and security incident were separate.

In response, the Hospital Parties argue that the Act preempts the claim because the security incident was the "triggering event" that led to McCoy's suspension and ultimate termination. (Doc. 13 at 4). They claim that security removed McCoy from the premises because she confronted coworkers about her warnings. (*Id.* at 3-4). As a result of the confrontation at the hospital, the Hospital Parties assert that they placed her on suspension, which later resulted in termination. (*Id.* at 4). But at this stage of the proceedings, the Court can only consider the facts contained in the complaint, and any inferences must be drawn in McCoy's favor. *Knievel*, 393 F.3d at 1076. This Court must accept as true McCoy's assertions that she was at SCL Health only to collect materials and coordinate details for an event and that she was terminated only for her apologies to coworkers. (Doc. 4 at ¶¶29, 31).

Taking McCoy's allegations in the complaint as true, McCoy's claim for emotional distress based on the security incident presents a closer call than the other factual bases for her emotional distress claim. But because no allegations in the complaint connect McCoy's removal from the premises to her ultimate termination, her emotional distress claim may proceed on that basis. As explained above, McCoy

provides two reasons for going to the SCL Health location while on leave: to appeal her second written warning and to coordinate details for an event that was happening while she was on leave. (*Id.* at ¶29). Because McCoy alleges that she was on the premises for reasons unrelated to the written warnings or apologies, there is at least some separation between her reason for being on the premises—and subsequent removal—and the reason for her termination.

McCoy's emotional distress claim can proceed at this stage for two reasons. First, as discussed above, no allegations in the complaint connect the security incident to the termination. *See Beasley*, 853 P.2d at 87. And unlike the apologies, the complaint provides no clues as to the source of McCoy's removal. Second, even if McCoy was never terminated, she would have still suffered the same distress following her removal. *Cf. Kulm*, 948 P.2d at 246. McCoy alleges that she suffered emotional distress because of her status as a longtime employee and the fact that she was removed "in front of [her] coworkers." (Doc. 4 at ¶29). Although the security incident happened around the same time as all the other events giving rise to her termination, and it was undertaken by the same actors who discharged her, the inferences the Hospital Parties ask this Court to make at this stage prove too much:

accepting that any temporally proximate, employer-directed action necessarily merges with a later termination collapses the preemption inquiry into a bare timing rule.

**3. The Act Preempts the Emotional Distress Claim to the Extent it Depends on Suspension and Termination.**

The Act preempts McCoy's emotional distress claim to the extent that she incorporates by reference her suspension and discharge as a basis for the claim. McCoy cannot proceed on an emotional distress claim based on her termination itself, because a claim resting entirely on discharge—with no independent conduct or duty separate from that decision—is precisely what §39-2-913 displaces. *See Beasley*, 853 P.2d at 86; *Kulm*, 948 P.2d at 246.

## IV. Prejudice

Having determined that the Act partially preempts McCoy's emotional distress claim, the Court now considers whether to dismiss these portions with prejudice. Dismissal with prejudice is appropriate when amending the complaint would be futile. *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). Because the portions of McCoy's emotional distress claim relying on the written warnings and termination could not be saved by amendment—as any repleading would still run into the same discharge-based preemption bar—those portions are dismissed with

prejudice. The portion of the claim based on the security incident survives and may proceed.

## V. Conclusion

Because the Act preempts damages only to the extent that they are premised on the warnings, suspension, and termination, McCoy can proceed with her emotional distress claim to the extent it relies on the security incident.

IT IS HEREBY ORDERED that the Motion to Dismiss (Doc. 5) is **GRANTED** to the extent that Count Two is premised on McCoy's warnings, suspension, and termination. The Motion to Dismiss is otherwise **DENIED**.

IT IS FURTHER ORDERED that Count Two be dismissed with prejudice to the extent that it is premised on McCoy's warnings, suspension, and termination. IT IS SO ORDERED.

DATED this 18th day of September, 2026.

Kathleen Lane
KATHLEEN S. LANE
United States District Judge